Case, as it turns out, this morning, because another one fell by the wayside. We do have a traffic light system, and we normally like to observe it, but we've got all the time in the world this morning, but I don't recommend that you take more than your allotted time. We have read a fair amount of the record in this case, but we still appreciate record excerpts or citations when you have them. This case is number 21-50256, Kennedy v. Pioneer Natural Resources. Ms. Cowan. Good morning, Your Honors. Rachel Cowan on behalf of the Appellant Pioneer Natural Resources Company. May it please the Court. Plaintiff Robert Kennedy worked as a pipeline inspector for onshore quality control specialists and then applied consultants. Each hired him, determined his compensation and work duties, and decided to compensate those duties as exempt from the overtime requirements under the FLSA. Before commencing this lawsuit, Mr. Kennedy executed arbitration agreements with both onshore and applied that promised he would arbitrate his disputes on an individual basis, including any claims for unpaid overtime that arise out of his employment. Only after he promised to arbitrate his disputes did onshore and applied consultants assign him to perform inspection services at a pipeline owned and operated by their customer, Pioneer. Despite his promises, Mr. Kennedy brought FLSA claims against Pioneer in federal court, alleging that it failed to pay him owed overtime and sought to represent a collective that encompasses all oilfield workers employed by any vendor of Pioneer who were also paid a day rate with no overtime. Pioneer moved to compel arbitration of Kennedy's claims, and both onshore and applied intervened and also moved to compel arbitration as the signatory to the contract and as a party that was aggrieved under Section 4 of the FAA. The district court denied Pioneer's motion. The intervener's motion is still down at the district court, although the magistrate judge has now denied those motions and the court has stayed. The district court has stayed the proceedings. Before you today now is Pioneer's motion to compel arbitration, and there are three errors in the district court's denial of that motion. First, arbitration is required because Kennedy agreed to arbitrate whether any particular dispute may be arbitrated. Both of the arbitration agreements that Mr. Kennedy executed included a delegation clause incorporating the rules of AAA, which reserved for the arbitrator the power to rule on his or her jurisdiction, including any issues of existence, scope, or enforcement. The Supreme Court's decision in Henry Schein and this court's decision in Britannia U make clear that the arbitrator should have decided whether Mr. Kennedy's particular agreements required arbitration of these claims. Second, even were the court to proceed to the merits, which it should not, that agreement includes a promise to arbitrate all disputes arising out of his employment with onshore or with applied. The plain language of the agreement obligated him to arbitrate these disputes. The record evidence is clear that these claims arise out of his employment with both onshore and with applied. And I would turn to the record in this case, which makes clear, if you look to the record between the ROA between 76 and 80, you see Ms. Lacey's declaration, and then there are a series of attachments. She is an employee of applied, and then the record at page 147 to 51, the declaration of Mr. Wattinger, an employee of onshore quality services. Those declarations then attach various documents, 32 of them, in which Mr. Kennedy acknowledged that he was an employee first of onshore, then applied, including in that record Form W-4s, which acknowledged under oath that he was an employee of onshore and applied. The plain language of the agreement dictates that he is obligated to arbitrate this dispute. Let me ask you a question. Why is Pioneer pressing arbitration? Why doesn't Pioneer simply move for summary judgment on the basis that he's not an employee? Well, I think, first of all, if Pioneer were to move for summary judgment, it would have to participate in the discovery process on a class-action basis, which is quite costly, and it would waive its right to enforce the arbitration. That has to come first. I'm well aware of this problem about these aggregate actions in FLSA cases. Couldn't a district court take a look at this situation and say, this man, whatever may be the situation of the . . . In other words, Swale says you don't even send out notice to the others, right, at the outset of the case. So you're not conducting wide discovery necessarily. But in its management authority, couldn't a district court say, this man's clearly an employee of onshore and therefore has no case? So Pioneer could have elected to waive its right to pursue arbitration, and it could have proceeded to the merits on the issue of whether or not it was a joint employer, because that is ultimately the question, Your Honor, is not whether Pioneer is the sole or exclusive employer, but whether it is a joint employer. What are the parameters of the joint employer doctrine? So that is going to delve into the amount of control that Pioneer would have exercised over Mr. Kennedy and other members of the collective. Are there any cases in the oil patch right now that . . . I mean, you know, we're getting a lot of appeals from these kinds of things. So are there any cases in the oil patch that are talking about joint employer? I thought it was pretty hard to achieve. It depends on what court you're in and what your facts are, to be candid, Your Honor. I have not researched and come prepared to argue whether Pioneer is a joint employer, and there is no record evidence to talk about what level of control, other than in the motions to intervene, obviously, those declarations that I referred you to, as well as the intervener's motions to intervene, make clear what the role of the inspection company is. They are engaged by Pioneer. I'm well aware of this. Believe me. You described yourself as their customer. Pioneer is the customer of the inspection companies, and what happens is Pioneer engages on shore or applied to be an inspector. I'm very sympathetic to Judge Jones's first question, but I'm just thinking, to me, the best case for you on the joint employer context is a case that's unpublished by us, Trujillo. So Trujillo is a case where arbitration was compelled under joint employment. Correct. That's why I'm saying it's your strong case, but that panel didn't engage with Jody James, and when I read Jody James, it suggests it can't be distinct and independent commercial entities, no matter how entwined. It really requires joint ownership. So we're sort of trespassing. We would be making an expansive, eerie guess. So I think we're conflating a couple different issues here. So first is whether or not Pioneer could have waived its right to pursue arbitration and litigated the merits of joint employment. No, I'm looking at intertwined claims estoppel. Okay. So with regard to intertwined claims estoppel, numerous courts have employed it in an allegation of joint employment. The court need not resolve whether or not we are a joint employer. All that the court has to look at is that those are the allegations. That's the Ragone case from the Second Circuit that Merrill Lynch looked to. But we're applying Texas law, correct? Correct. Okay. So would you speak to Jody James? So Jody James is a delegation case in which the court applied Texas law to whether there was a clear and unmistakable delegation. That is a pure issue of federal law under Arnold v. Home Away. The Supreme Court has recognized, even in Henry Schein, that whether there's been a clear and unmistakable delegation is purely a contravention of the Supreme Court and appellate court case law, and we do not look to state law. That is not where we are looking. We only look to state law for the substantive issue of estoppel. And what this court said in Britannia U is whether or not estoppel applies is an issue of enforcement that should be decided by the arbitrator if there is a delegation clause, here the AAA. This is controlled, I would argue, Your Honor, by Britannia U, and Jody James is in conflict by first determining that the AAA, if you go back to Jody James, it first says that Texas does not believe that the incorporation of the AAA rules constitutes a clear and unmistakable waiver. It's in conflict with this court's determinations in Petrofac and subsequent decisions. It then says that you look to issues of estoppel or state law to determine the clear and unmistakable waiver because of that presumption. It should be disregarded by this court as in contravention of Petrofac and subsequent decisions. Britannia U, Trujillo, the Second Circuit's decision in Ragon on estoppel, all of these decisions were tethered to joint employment. But in none of these decisions is the court delving into whether or not pioneer is a joint employer. That's for the arbitrator. Can I suggest one back again? Procedurally, you had a motion to stay in front of us. That should be moot because the district court did stay now. Okay, right, but you were saying our appeal would be moot had the district, is that correct? Is that at all relevant to where we are? Yeah, I think it would actually be helpful, Your Honor, if I could give you an update on where all of these cases are. That would be very helpful. Yeah, very helpful. Because you had said had the district court granted their motion, our appeal would be moot. If the district court denied it, they would move to consolidate, correct? Yes. So there are actually three appeals before this court that are all raising this issue. So first, Newman v. Plains, All-American. That was heard last month. That was heard last month. Kennedy v. Pioneer being heard today. In both of those cases, the court ruled on the customer's motion first. That came up on appeal. The intervener's motion in Newman v. Plains was decided and is now separately on appeal and is in briefing. Okay, what's the caption of that case? I'm sorry, Your Honor. It came out of the Western District of Texas and is currently here, but there are two captions, and I don't know the caption numbers. But wouldn't that be logically the first? I agree, yes. So Newman v. Plains is going to reach both issues or argue both issues first. I can't say who's going to write their decisions first, obviously. And then you have Kennedy v. Pioneer where the motion of the interveners is actually stuck at the district court because although there's been an or-and-or by the magistrate, this is the same district court judge on all three of those cases. He seems to be waiting on the appeals court, doesn't he? But, I mean, frankly, it baffled us how they could have said there was no arbitration requirement against Onshore. He had the intervener.  But what also baffled me was that there was a motion to intervene in this court, right? Yes, it's been granted. Not in this case. Intervention was granted, but the substantive motion to compel arbitration has not been consolidated. Correct. There is no appeal from the intervener in this case. Correct, there cannot be. Correct. Right. But I thought that, yeah, you moved to stay in this case pending Newman. Yes. Right. And then there's a third case, Hinkle v. Phillips 66. I'm sorry, third or fourth? Third. This is? It'll be a third case in the district court. Oh, I see. Okay. Hinkle v. Phillips 66. And that is before this court on all parties' motion to compel arbitration. There, the court ruled on everything together. Do you have the case number for that? I don't. I'm sorry. Well, that's very helpful, nevertheless. And as a result, we may actually have three panels, three cases from the district court, but four appeals, and one more potentially were the lower court to lift the stay for the purpose of getting the intervener's motion. So you say the Hinkle case is in briefing right now? And did the district court approve or deny arbitration? In all of these cases, arbitration was denied by the customer's motion. In Phillips 66, in Plains All-American, the intervener's motion has been denied, and those are on appeal. So there are five appeals, if you will. And yes, everything is being briefed, and Newman v. Plains has already been argued on Plains' motion. Well, I guess how many other cases are back there in the woodwork? So ironically, Your Honor, these three cases come from the same district court judge, but there are cases pending all over the country raising this argument. So this claim has now been argued on. So Newman v. Plains and Hinkle v. Phillips 66, the inspection firm is Cypress Energy, similar but not identical arbitration agreement, no material differences for purposes of this issue, and that has already been argued to the Sixth Circuit and has fully briefed and was argued back in October, and I would expect a decision there as well shortly. And then two have been argued to the Tenth Circuit, Reeves and Farrell, and those have been decided on the merits of estoppel. You're using up a lot of your time with this. Send us a 28-J letter, please, and identify all these cases. You know, consistency means a lot here from the standpoint of the business community, whether we were right or wrong ultimately. And just send us a 28-J letter and explain all that. You can have two more minutes. Yes, Your Honor. With those two minutes, I'd like to just finally address the intertwined claims estoppel. Here this Court has made an eerie guess that Texas would recognize intertwined claims estoppel, and the purpose of that doctrine is to preclude artful pleading whereby somebody is making a claim in substance against the signatory but has made a claim in form against a non-signatory to evade its duty to arbitrate. And that is precisely what has occurred here, and I would point this Court to the Tenth Circuit's decision in Reeves and Farrell. Although those cases were decided under Oklahoma law applying concerted misconduct estoppel, which Texas has not adopted, I still believe the reasoning in those decisions would be helpful to this Court. This is an issue where Mr. Kennedy is alleging he has employed or worked for Pioneer only by virtue of being assigned there by Applied and Onshore. And I think Judge Baldock in his decision in Farrell addressed that aptly under a rationale that would apply equally to intertwined claims estoppel. This is the epitome of artful pleading and designed to pull a fast one, playing fast and loose to pull a fast one on the Court. That's what Judge Baldock said. And he cited back to authority from this Circuit, quoting that fast and loose language. As he noted, but for the inspection firm hiring these individuals, they would not have any relationship with the midstream company. And as a result, Mr. Kennedy should be estopped from evading his arbitration agreement.  Thank you. Okay, thank you very much. Thank you, Your Honor. Good morning, and may it please the Court. My name is Rex Birch, and I represent Robert Kennedy. Pioneer does not have an arbitration agreement with Mr. Kennedy. That's true whether we are discussing a full arbitration agreement or a delegation clause. The Supreme Court tells us that a delegation clause or an agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce. And the FAA operates on this additional arbitration agreement just as it does any other. That process begins, as Judge Smith says, as it always does, with the Court determining whether the parties entered into any arbitration agreement at all. Let me ask you, I forgot to ask Ms. Cowan, is there an indemnity agreement between Pioneer and Onshore? They have said there is. It is not part of Mr. Kennedy's agreement. Obviously, he's not aware of that. And, of course, Your Honor is aware that under Fifth Circuit law, Fifth Circuit has said there's no common law indemnity or contribution for FLSA. I understand that. I meant an express agreement because there is in many of these situations. I have seen that in some of these cases where there is that agreement. Would we be inferring correctly to say that your firm is probably involved in the vast majority of these types of cases right now? You know, it's funny, Your Honor. When I came up and said I represent Mr. Kennedy, I almost said and Mr. Newman and Mr. Hinkle and so on. I mean all around the country. I don't mean just in Texas. Yes. Yes. Ms. Cowan and I have gotten to see a bunch of our fair nation together. And what's your point? My point is that under Texas law, different from how the Tenth Circuit has guessed that Oklahoma would go, under Texas law, we don't recognize concerted misconduct estoppel, and we take a strict view of who is entitled to enforce the contract. So put differently, the question before us today is whether an arbitration clause exists between the relevant parties. And the relevant parties for the purposes of this appeal are Pioneer and Mr. Kennedy. This court applies ordinary state law principles of contract to determine whether an agreement has been formed between the relevant parties. Texas law permits signatories to an arbitration agreement to identify other parties in their agreement who may enforce the agreement as if they signed it themselves. And both Onshore and Applied did precisely that in their contract. For example, Mr. Kennedy's estate is covered and Onshore How do you object? I mean, I assume you're representing Kennedy down in the district court, right? I am. Yeah. What was your argument that he can't arbitrate even against Onshore? So he has no claim against Onshore, and he will never have a claim against Onshore. Why is that? Well That's his employer within arbitration agreement. They say that, right? They say Well, it's in the record. I don't know. They do. Let's assume arguendo. I'm just wondering, on what basis did the magistrate judge say that there was no arbitration down there? Because the folks at Onshore aren't trying to make Mr. Kennedy arbitrate with Onshore. They're trying to make him arbitrate with Pioneer. That's a distinct issue. And, of course, if they have an indemnity agreement, it's all the same thing. Maybe. I mean, there are a bunch. I'm aware of Your Honors being on the Crescent v. Sanchez oil and gas case. I'm aware of that, obviously. Oddly enough, I'm involved in the underlying Crescent v. Sanchez case. But there are lots of cases that say that those contract provisions are unenforceable. And, again, there isn't Well, never mind. I'm sorry. That's a rabbit trail. I was just wondering. Fair enough. Perhaps we'll see each other again on that. So Your guy's making $150,000 a year, though, right? He makes more than $100,000 a year. I mean, he also obviously works a ton of hours. He works, you know, 84-plus hours a week. And so he has effectively two full-time jobs. And so does he make more than $100,000 a year? I'm sure that he does. He also obviously risks his life and works tons of hours to do so. But that's neither here nor there for this argument. I would submit. When the parties dispute This is from Halliburton Energy Services v. Iron Shore Specialty from the Fifth Circuit in 2019. When the parties dispute whether a non-signatory can compel arbitration pursuant to an arbitration clause, their dispute questions the existence of a valid arbitration clause between the specific parties and is, therefore, for this Court to decide. That challenge is heard by the Court even when there's a delegation clause. That's the Edwards v. Doordash case, also from this Court. And the federal policy favoring arbitration does not apply to that determination. Instead, courts apply traditional principles of state law. Texas law tells us that the existence of a valid agreement Look, I don't mean to speak for Sure. We know the general parameters of your position. Why don't you address Ms. Cowan's argument? Since you're the appellee, she may, you know Why don't you address her arguments that disagree with you, such as that Jody James Farm is not compelling on the question of delegation that the question of delegation is a federal question, not a state question. Why don't you start with Can you answer those? Of course.  Recall what we talked about at the beginning. There's two steps. Is there an agreement, right, whether that's an agreement to arbitrate generally or one to arbitrate a gateway issue? Then step two, what's the scope of that agreement? Clear and unmistakable, according to the Supreme Court, affects step two. We're talking about step one. Step one is Gateway validity issue. What's that? Whether there's a contract, this is a gateway validity issue. Correct. So Jody James speaks to whether or not, at least in part, whether or not there is an agreement. Halliburton versus Ironshore talks about whether there's an agreement. There must first be an agreement before it can clearly and unmistakably do anything. That is a scope issue and not an existence issue. Why was I wrong when I was asking about Trujillo being a difficult case for you? I know it's unpublished, but the court there said a non-signatory can compel when its claims are intertwined and indistinguishable. Do you remember? I know that case well, so a couple of things. One, in that case, the court applied Texas's summation of what And it specifically found that the claims in that issue were intimately founded in and intertwined with the underlying contract obligation. That's key, right? The underlying contract obligations. The court specifically found that. It's an abuse of discretion review of that question because it's equitable estoppel. And the court found that. There's not a whole lot of discussion of what the terms of the contracts are in that case, but they appear to be employment contracts. They appear to govern various aspects of the employment relationship. That's not the kind of contract that we have. Sorry. Go ahead. I just thought Pioneer basically was reaching out to these inspection firms saying, we want your employees. It would be a pretty intertwined employer-employee relationship. Again, that's the problem, right? Texas has, my colleague said that they haven't adopted concerted misconduct estoppel. That's not accurate. They have rejected it. They have said, we don't do that. We don't enforce other contracts just because people acted in a concerted manner, and we don't enforce arbitration agreements because other folks worked in it. It is not, and the district court and the magistrate judge make this clear, the question is not, you know, whether you are intimately founded in their relationship. And that is the only thing that Pioneer argued to the district court was not the contractual obligations, but rather the intertwinedness of the relationship between the parties. That's not, that's clearly not enough. There's no, there's not even an allegation. Suppose there were an indemnity agreement, and wouldn't that constitute an intertwining? So, again, I'm not familiar with the indemnity agreement here. I know that in the Plains appeal, there was a contract that they said had an indemnity agreement in it. That agreement, of course, mandated that people proceed in court, not arbitration in Texas. And so, if it's intertwined with that contract, that contract mandates that folks proceed in court. So. Could you speak a little bit, I know you've got plenty of time, but to my first-in-time concerns, in having heard, I assume you agree with her description of the constellation of cases, and I'm just talking about the ones in our circuit. Yes. And did you oppose, this is a second-level question, did you oppose the motion to stay? I did. You did. I did, but I think, as I recall, Judge Smith ruled on it before hearing from me. Ah. Okay, maybe just describe the first question then. What's the constellation? How many? I think that the constellation is more or less correct. I would say that there are, I think that it would be incorrect to say that these cases hinge on each other. We're spending a lot of time talking about a different case, but this is, you know, the Newman v. Plains case, that contract is an employment contract, as opposed to just a standalone arbitration agreement. There are different arguments as to whether or not the claims could be intertwined with that contract. I still don't think they get there. I'll explain why if we have time. Well, don't we have to go with the agreement that your client executed in determining whether you, your client, agreed that arbitrability is delegated to the arbitrator? Yes. And isn't that governed by federal law, not by Jody James? Not when the question is, does that agreement exist? That is clearly a question of state law. Well, no, I mean, you clearly have an arbitration agreement. Kennedy clearly, there is an arbitration agreement, right? I'm trying to sort out the chicken and the egg here. That's all. Right. So I would go back to— Kennedy signed an arbitration agreement. It's right here. You know, it's very comprehensive, and it is against, with onshore and allied. It says we're applying the AAA. It says it's all agreements. In accordance with the rules of the AAA, which means that you, that includes a question of arbitrability, although I don't recall whether you briefed that in this case. So it exists, and as I understand it, Homeaway says that's a federal question. I don't think that. What Homeaway says is whether or not the quantum of evidence is sufficient to meet the clear and unmistakable evidence standard, whether or not this particular claim has been delegated, this aspect of arbitrability has been delegated, that question is governed by federal law, because federal law pushes it, right? Typically, we think of arbitration agreements, you kind of default in favor of finding that there has been, that it's covered by the arbitration agreement. Not so with arbitrability. There, the presumption works in the reverse. The reverse is true, meaning that you presume it doesn't cover arbitrability, that you haven't delegated. But again, that's, you know, what Judge Smith, you know, chided me about in Kubala. That's a second-step question. This is the first-step question. And in Jody James, obviously, the Texas Supreme Court, I think, put it very well by saying, the question is not whether or not Mr. Kennedy agreed to arbitrate with somebody. He also has an arbitration agreement with T-Mobile. The folks at Pioneer can't walk in here and say, you have an arbitration agreement with T-Mobile, and T-Mobile has a delegation clause in their arbitration. But they're not being charged with being a joint employer with T-Mobile. And they're not being charged with being a joint employer by us either. Well, how are you going to, so you're going to say, even though you got all your money and they're in an independent contractor relationship, I mean, really, you are totally breaking down the employment relationship under the FLSA if your idea is that anyone who works for a services contracting company is actually the employer of the customers? Okay, well, that's certainly not my argument. Well, that's what all your cases imply. And again, I recognize that the merits of our case aren't here, and I appreciate Your Honor's view on things. I will tell you that in a case, Gray v. Powers, where you and I were together before, the court held that the employer analysis proceeds individually. In order to be a joint employer, you must first be an employer. So question number one, are you an employer? Question number two, are you a joint employer, such that you are now liable not only for violations committed on your watch, so to speak, but also the violations committed on your co-employer's watch? That's not what we're trying to do here. We're saying we work for you. You directed us. You supplied the equipment. You were our supervisor. You set our hours. You controlled our pay. You are the employer. That's what we say. They're defensive allegations, which it would be ironic to think that I should be a stop based on what the other party says, not based on what I say, but based on what the other party says. To me, it would be backwards. So the question of joint employer, even if that were the standard, which it is not, I think is answered by the Supreme Court's, Texas Supreme Court's decision in Merrill Lynch. Because there they say it is not enough that there be alleged. And mind you, we haven't alleged this. But even if there is alleged to be a conspiracy between the parties, that is not enough to create intercline claims estoppel because it doesn't reflect the kind of close relationship that is mandated under Texas law. I mean, not for nothing, civil conspiracy under Texas law requires proof that the person's. Yes, we understand. Okay. Fair enough. So that's a step further than joint employment, if anything, because it includes a mens rea element as well. You have to intentionally have done it and intentionally tried to cheat somebody such that you're. So you are not asserting any sort of FLSA claim against onshore or applied? No. Mr. Kennedy has never sued onshore and or applied and never will. And indeed, just to assuage your concerns further, his statute of limitations have run on his claim against applied and they will run in a few weeks against the folks at applied. Onshore it's already run and applied they'll run in just a few weeks. But I'm telling you now, he will never bring that claim. Well, and I interrupted your trains of thought, so if you want a couple more minutes, feel free. I appreciate that. Because my colleague ended with intertwined claims estoppel, I'd like to revisit that just a little bit. Texas, of course, hasn't actually adopted intertwined claims estoppel. Its intermediate appellate courts are split on the issue, but this court has said we predict that they would adopt it. Aren't we bound by that? I mean, aren't we bound by that? A panel of our court has said the Texas court has said. No, I think so. So we are. Yeah, I think so. I think so. Yes. Yes. But helpfully, the Texas Supreme Court has said this is what intertwined claims estoppel would be under Texas law if we were to adopt it. And I'm not sure if this was precisely your question, but I think we're bound even though Jody James postdates Hayes. I think so, too. Okay. So intertwined claims estoppel exists only when the non-signatory has a close relationship with a signatory to a contract with an arbitration agreement and the non-signatory's claims are intimately founded in and intertwined with the contract obligations. Page 53 of the record sets forth exactly what Pioneer told the district court here was the intertwined. And the intertwined had nothing to do with the contract. To the contrary, Pioneer's alleged conduct is relevant to Kennedy's claims and is inextricably aligned with Onshore and Applied's conduct, not the contract, conduct. Texas has said conduct, concerted misconduct. We don't adopt that. And I would like to just say that the Tenth Circuit has ruled in a similar case. And in that case, they said the court decides, which is what we argue here. They said no to intertwined claims estoppel because the claims don't arise from the contract. They said yes to concerted misconduct estoppel, which is precisely the kind of estoppel that Texas has rejected. And so if enterprise was applied here, the answer would be different. And that's just part of living in a Federalist society where there are variations in state contract law. All right. We have your argument. Thank you, Your Honor. Thank you for the extra time as well. I realize I went over now. Ms. Allen, rebuttal. Thank you, Your Honors. First, I think it's clear from Britannia U that whether a non-signatory may enforce a valid agreement under a theory of estoppel is an issue of enforcement, not formation. And although that question is typically a gateway issue decided by the court by looking to principles of state law, whereas here there's a valid delegation clause, whether the non-signatory may enforce the agreement must be determined in the first instance by the arbitrator. And that's not just my reading of Britannia U. As you noted, Judge Jones, consistency matters to this court, and that's the Sixth Circuit's reading of your decision in Britannia U as set forth in the Blanton v. Domino's pizza case. Second, Mr. Birch has suggested to you that intertwined claims estoppel only applies when the claim requires interpretation of the contract where the arbitration agreement sits. But that would conflate and collapse two different doctrines, direct benefits estoppel and intertwined claims estoppel. They are different. As you noted, Judge Jones, there are multiple contracts at issue in this case. The master services agreements, which do contain indemnity provisions, which were part of the basis upon which applied and onshore intervened. Is that in the record here? It would be in the appellate record because the whole briefing on the motions to intervene are before this court, and I'm going to turn to some additional declarations in that in a moment. So, yes, there has been a demand for indemnity by Pioneer to applied and onshore. Finally, you asked are they going to sue or bring claims or are the claims intertwined with the employment with onshore and applied? Mr. Kennedy did submit a declaration that is in the record before this court at ROA 349 to 352 in support of his motion to certify the collective, in which he attested as follows. I worked for Pioneer Natural Resources, Pioneer, through onshore quality specialists, onshore, and later applied consultants, applied, as a construction manager from approximately September 2018 and April 2019. During this time, I was financially dependent on Pioneer through onshore applied. I relied on Pioneer as my employer in my assignments, with Pioneer provided a predictable paycheck. Even though I worked directly for Pioneer through onshore applied, I was classified as an independent contractor. Now, I don't know how that claim is being made when there are W-4s and W-2s, and I think this is an artful pleading again, talking about the fact that Pioneer used applied and onshore as independent contractors. Mr. Kennedy is an employee who paid withholding tax. Finally, Pioneer and or its clients, that's onshore and applied, controlled my work. Pioneer and its clients required all the day rate workers classified as independent contractors to adhere to strict guidelines, expectations, and directives. This declaration makes clear that the only pathway to bring a claim against Pioneer is by virtue of Mr. Kennedy's employment with onshore and applied. In the first instance, whether or not estoppel is a basis for Pioneer to compel arbitration should be decided by the arbitrator, but in any event, Mr. Kennedy should be stopped from avoiding his arbitration obligations. Thank you, Your Honors. All right. Thank you very much. That concludes our docket for this morning. And we